Case 3:20-cv-00255 Document 25 Filed on 05/27/21 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
May 27, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| BAYOU CITY WATERKEEPER, | § § | |
| Plaintiff. | § § | |
| VS. | § | CIVIL ACTION NO. 3:20-cv-00255 |
| | § | |
| U.S. ARMY CORPS OF ENGINEERS, ET AL., | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Bayou City Waterkeeper filed this lawsuit against the United States Army Corps of Engineers (the "Corps") and several individual government employees acting in their official capacities (collectively, the "Government").[1] The Government has moved to dismiss the claims for lack of subject matter jurisdiction. *See* Dkt. 14. Having reviewed the Amended Complaint, the briefing, and the applicable law, I recommend that the motion to dismiss be **DENIED**.

## BACKGROUND

Bayou City Waterkeeper is a non-profit organization dedicated to protecting and restoring the Lower Galveston Bay watershed. It filed the current lawsuit on behalf of some of its members who live in a suburban neighborhood bordering Robinson Bayou, a waterway that joins Clear Creek on its way to the brackish waters of Clear Lake harbor. Broad Reach Partners LP ("Broad Reach") owns 30 acres of land situated between the neighborhood and Robinson Bayou.

---

[1] Originally, this lawsuit was filed against Ryan McCarthy as the Secretary of the Army, Lieutenant General Todd T. Semonite who was serving as the Chief and Commander of the Corps, and Colonel Timothy R. Vail serving as the Galveston District Commander. Ryan McCarthy and Lieutenant General Semonite have since been replaced. The current Secretary of the Army is Christine Wormuth and Lieutenant General Scott A. Spellmon is the current Chief and Commander of the Corps. As a result, Wormuth and Spellmon will be substituted as parties to this case under Federal Rule of Civil Procedure 25(d). Colonel Vail is still serving as the Galveston District Commander and remains a party to this case.

In 2012, Broad Reach applied for a permit under § 404 of the Clean Water Act ("CWA") to fill in approximately one acre of wetlands so that it could develop a residential neighborhood. Bayou City Waterkeeper alleges that the permit application "ignored nearly 9 acres of forested wetlands affected by its project." Dkt. 12 at 2. According to Bayou City Waterkeeper, the Corps withdrew Broad Reach's permit application in 2014 after Broad Reach failed to resolve concerns raised by the Environmental Protection Agency. Nonetheless, Broad Reach began development of the property in 2015 without any permit from the Corps.

In 2019, the Corps issued an "approved jurisdictional determination" ("AJD") that "retroactively deemed only 1.35 acres of wetlands" to be protected under the CWA as waters of the United States. *Id.* Bayou City Waterkeeper sued the Government in August 2020, claiming that the Corps issued the AJD in violation of § 706(2)(A) of the Administrative Procedure Act ("APA"). Bayou City Waterkeeper alleges that the AJD effectively absolved Broad Reach of any responsibility to mitigate the destruction of nine acres of wetlands. Without mitigation, Bayou City Waterkeeper alleges that its members residing near the property will suffer increased flooding and the loss of wildlife in the area.

Bayou City Waterkeeper requests an order vacating the AJD or declaring the additional nine acres to be jurisdictional waters of the United States. The Government argues that Bayou City Waterkeeper has no constitutional standing to sue, and requests an order dismissing this case for lack of subject matter jurisdiction.[2]

## SUBJECT MATTER JURISDICTION

Section 702 of the APA has been interpreted as creating a presumption in favor of judicial review of agency action, "so long as no statute precludes such relief

---

[2] Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a claim if the district court does not have subject matter jurisdiction over a dispute. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss for failure to demonstrate constitutional standing is properly considered under Rule 12(b)(1). *See Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

or the action is not one committed by law to agency discretion." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). Judicial review is also unavailable to attack agency actions that are not final. *See* 5 U.S.C. § 704. If the agency action is final and not committed to agency discretion, and if judicial review is not precluded by statute, the plaintiffs still must show that they have constitutional standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").

It is undisputed that AJDs are final agency actions subject to judicial review under the APA, *see U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1814–15 (2016), and the Government has pointed to no statute that might preclude judicial review here. The only question before me is whether Bayou City Waterkeeper has standing to sue. An organization has standing to sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). The Government argues that Bayou City Waterkeeper does not have standing to sue because the members it represents do not have standing to sue.

To establish Article III standing, an individual bears the burden of showing that he suffered "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (quotation omitted). On a motion to dismiss, district courts analyze standing "based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ecosystem Inv. Partners v. Crosby Dredging,*

*L.L.C.*, 729 F. App'x 287, 292 (5th Cir. 2018) (quotation omitted). *See also Lujan*, 504 U.S. at 561 (explaining that the plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation").

## A.   INJURY-IN-FACT

"[G]eneral factual allegations of injury resulting from the defendant's conduct" may survive a motion to dismiss. *See Lujan*, 504 U.S. at 561. Members of Bayou City Waterkeeper can show that they have suffered an injury in fact by alleging that they "use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth*, 528 U.S. 183 (quotation omitted). Still, the injury must be imminent and not speculative. *See Lujan*, 504 U.S. at 564 n.2 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." (cleaned up)).

Before Broad Reach began developing its property, Bayou City Waterkeeper alleges that its members regularly visited the wetlands along Robinson Bayou to observe wildlife, photograph nature, and experience solitude and quiet. *See* Dkt. 12 at 7. Bayou City Waterkeeper alleges that Broad Reach filled in nine acres of wetlands protected by the CWA without obtaining a permit from the Corps. It was only after Broad Reach filled in the wetlands that the Corps issued an AJD declaring those nine acres to be non-jurisdictional waters of the United States. This AJD absolved Broad Reach of any penalties it might otherwise face under the CWA, and it meant that Broad Reach would not have to mitigate the loss of those nine acres of wetlands. Without mitigation, Bayou City Waterkeeper alleges that its members will experience "the threat of increased flooding and the loss of [the forested wetland's] aesthetic value." Dkt. 12 at 9. These allegations are sufficient to establish standing at the motion to dismiss stage. *See Kleinman v. City of Austin*, 310 F. Supp. 3d 770, 776 (W.D. Tex. 2018) ("Aesthetic and recreational injuries constitute injuries in fact for CWA citizen-suit plaintiffs."); *Black Warrior*

*Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1280 (11th Cir. 2016) (finding injury in fact based on aesthetic and recreational injuries in a non-citizen suit).

**B.   CAUSAL CONNECTION**

To establish standing to sue, Bayou City Waterkeeper must also allege facts showing that the injuries to its members are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Under the facts of this case, where Bayou City Waterkeeper is not the direct target of agency action, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 562 (quotation omitted). *See also Warth v. Seldin*, 422 U.S. 490, 505 (1975) (explaining that "the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights"). In this posture, a plaintiff can show causation "by establishing that the challenged agency rule permitted the activity that allegedly injured her, when that activity would allegedly have been illegal otherwise." *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 440–41 (D.C. Cir. 1998).

The injury complained of here is fairly traceable to the Corps' retroactive issuance of the AJD. If the Corps had not issued the AJD declaring nine acres to be non-jurisdictional, Broad Reach's fill activity would have been unlawful under the CWA. The Government could have brought enforcement actions against Broad Reach and required Broad Reach to mitigate the destruction of those nine acres of wetlands. Alternatively, Bayou City Waterkeeper could have filed a citizen suit against Broad Reach under the CWA for unlawfully filling in jurisdictional waters of the United States. *See* 33 U.S.C. § 1365 (citizens may sue "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter"). Either way, the loss of nine acres of wetlands could be mitigated. By issuing the AJD, the Corps shielded Broad Reach from any liability under the CWA. Because of the AJD, Bayou City Waterkeeper can no longer seek to redress the

5

injuries to its members. This is enough to establish causation for purposes of a standing analysis. *See Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs*, No. 2:15-cv-514, 2016 WL 6876652, at *4 (S.D. Tex. Nov. 22, 2016) ("Plaintiff's and its members' injuries are the direct result of [the Corps'] issuance of the [letter of permission] authorizing [third party] to construct and operate the [third party's] industrial barge fleeting, service, and fuel sales facility.").

The Government argues that the injuries to Bayou City Waterkeeper's members were caused by Broad Reach's fill activity, not the retroactive AJD declaring nine acres to be non-jurisdictional waters of the United States. But showing that an injury is "fairly traceable" to the defendant does not require an allegation that "the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). *See also Aransas Project v. Shaw*, 835 F. Supp. 2d 251, 263–266 (S.D. Tex. 2011) (discussing causation in cases brought under the Endangered Species Act). The Government cites *Ouachita Riverkeeper, Inc. v. EPA*, No. 3:14-cv-4495-L, 2016 WL 215472 (N.D. Tex. Jan. 19, 2016), but that case carries no water. In *Ouachita*, the plaintiff sued the EPA for failing to object to a draft permit the State of Arkansas intended to give to a private company. *See* 2016 WL 215472, at *1. The court held that the plaintiff had no standing to sue under the CWA because the permit was going to be issued by the State of Arkansas, not the EPA. *See id.* at *2. The plaintiff sued the wrong entity altogether. *See id.* at *3. ("'EPA's decision not to object was not the cause of Plaintiffs' alleged injuries. Instead, the state's subsequent decision to permit the Permit was the cause.'" (quoting intervenor's brief with approval)). That's not the case here.

Here, Bayou City Waterkeeper is suing the Corps for issuing an AJD to Broad Reach in violation of the APA. Bayou City Waterkeeper alleges that the Corps' decision was arbitrary and capricious, and that the AJD allowed Broad Reach to fill in wetlands without mitigation to the detriment of Bayou City Waterkeeper's members. According to Bayou City Waterkeeper, the AJD shields Broad Reach

6

from any attempt to redress the injuries suffered by Bayou City Waterkeeper's members. Vacating the AJD, according to Bayou City Waterkeeper, will remove that shield and provide it with a fighting chance of enforcing the CWA. Causation is established. *See Black Warrior Riverkeeper*, 781 F.3d at 1282 (tracing an injury to plaintiff's aesthetic interests to the Corps' issuance of a § 404 permit to a coal mining company).

### C. REDRESSABILITY

An injury is redressable when "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 181. In cases such as this, where the "plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else* . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Lujan*, 504 U.S. at 562. The plaintiff bears the burden of "showing that those choices have been or will be made in such a manner as to . . . permit redressability of injury" *Id*.

As a jumping off point, it's clear that Broad Reach has already filled in alleged waters of the United States without a § 404 permit. It is also clear that the AJD issued by the Corps serves to protect Broad Reach from any enforcement proceedings and mitigation responsibilities. The only question is whether an order from this Court could alleviate the injuries alleged by Bayou City Waterkeeper, namely aesthetic injuries and risk of flooding. Bayou City Waterkeeper alleges that its injuries would be redressed by an order vacating the AJD or judicially declaring that the wetland areas on the Broad Reach site are jurisdictional and therefore subject to the CWA. According to the Government, these requests fail because (1) this Court lacks the authority to enter the declaratory judgment Bayou City Waterkeeper requests; and (2) vacating the AJD would not redress the alleged injuries.

On the declaratory relief issue, the Government argues that this Court does not have the authority to enter an order judicially declaring that "'the wetland areas

7

on the Broad Reach site improperly excluded by the Corps are jurisdictional.'" Dkt. 14 at 14 (quoting Dkt. 12 at 30). As Bayou City Waterkeeper correctly notes, "the questions regarding the *availability* of declaratory relief and its *propriety* based on the merits are not questions regarding subject matter jurisdiction." Dkt. 19 at 11. Those are issues regarding the appropriate remedy, not standing, and would be better addressed later on as this case nears trial.

Turning to whether vacating the AJD would redress the injuries alleged by Bayou City Waterkeeper, the Government advances two arguments. First, the Government notes that vacating the AJD "would not remove the existing Broad Reach Development." Dkt. 14 at 16. This argument presupposes that Bayou City Waterkeeper's injury is the Broad Reach development, and that its members want the Broad Reach development removed. But that's not the case. The alleged injury to Bayou City Waterkeeper's members is the unmitigated loss of wetlands authorized by an AJD allegedly issued in violation of the APA. Vacating the AJD would permit Bayou City Waterkeeper to pursue a citizen suit against Broad Reach to enforce the CWA's mitigation requirements. The desire to obtain mitigation, rather than tear down existing structures, distinguishes this case from the cases cited by the Government. *See* Dkt. 14 at 16–17 (citing *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6 (D.D.C. 2016); *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170 (3d Cir. 2008)).[3]

---

[3] *Sierra Club* is distinguishable for two reasons. First, the fill permit at issue in *Sierra Club* required "the preservation and enhancement of over 600-acres of wetlands to mitigate the loss of the 7.69 acres to be filled." 277 F. App'x at 173 n.3. No mitigation occurred with respect to the Broad Reach property at issue here because the Corps declared the nine acres of wetlands to be non-jurisdictional. Second, the complaint at issue in *Sierra Club* did not request "further mitigation," but instead wanted "the 7.69 acres on the Arena site [to] be preserved" despite the fact that the wetlands had already been filled. *Id*. Here, Bayou City Waterkeeper does not seek to preserve the nine acres that Broad Reach has already filled. Bayou City Waterkeeper wants the loss of those nine acres to be mitigated—a remedy Bayou City Waterkeeper alleges they have been denied by the Corps' allegedly arbitrary and capricious issuance of an AJD.

As for *National Wildlife*, the standing issue there was confronted on summary judgment, not a motion to dismiss, *see* 170 F. Supp. 3d at 11, so the plaintiffs had a higher burden to

The Government next argues that vacating the AJD would not redress the injuries alleged because the Corps has discretion to bring enforcement actions under the CWA which it may or may not decide to exercise upon vacatur of the AJD. *See* Dkt. 14 at 18–19 (citing *Lujan*, 504 U.S. at 571). To start, the Government's reliance on *Lujan* is misplaced.

In *Lujan*, the Secretary of the Interior and the Secretary of Commerce issued a joint regulation interpreting a statutory provision that required all federal agencies to consult "'as appropriate with . . . States'" before authorizing or funding any action that might threaten endangered species. *See Lujan*, 504 U.S. at 558 (quoting 16 U.S.C. § 1536(a)(2)). The joint regulation stated that the obligation to consult with "States" extended beyond American borders to include actions taken in foreign nations. *See id.* A year later, the Secretaries modified the regulation to limit its reach to agency actions taken in the United States. *See id.* The plaintiffs in *Lujan* sued on the theory that the "lack of consultation with respect to certain funded activities abroad 'increas[ed] the rate of extinction of endangered and threatened species.'" *Id.* at 562 (quoting the operative complaint). The plaintiffs argued that a court-ordered injunction requiring the Secretaries to go back to the old interpretation would redress their injuries. *See id.* at 559. The Court disagreed. *See id.* at 568 ("The most obvious problem in the present case is redressability."). The Court noted that the plaintiffs' requested relief "would not remedy [their] alleged injury unless the funding agencies were bound by the Secretary's regulation, which is very much an open question." *Id.* at 568. In other words, reinstating the consultative requirement for agencies funding projects in foreign

---

satisfy. *See Lujan*, 504 U.S. at 561 (explaining that the plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation"). Also, the plaintiffs in *National Wildlife* wanted the court to vacate a general permit "and enjoin all future authorizations under the general permit." 170 F. Supp. 3d at 14. The court reasoned that enjoining the construction of future bulkheads would not remedy "their only injury," which was caused by the existing bulkheads they did not seek to remove. *Id.*

9

nations would have no effect because the Secretary of the Interior probably had no authority to enforce it.[4] That's not the case here.

The Corps is bound by the APA. Agency action that fails to comply with the APA can be challenged in federal court and vacated for improper procedure. *See* 5 U.S.C. § 706. Bayou City Waterkeeper alleges that the Corps failed to comply with the APA's provisions when it issued the AJD. That noncompliance allegedly resulted in an AJD that unlawfully excluded nine acres of wetlands, caused injury to Bayou City Waterkeeper's members, and decreased the odds of Bayou City Waterkeeper's success in a citizen suit against Broad Reach. The Corps' argument that it has discretion to pursue enforcement actions under the CWA has nothing to do with its obligation to comply with the APA when issuing AJDs. Bayou City Waterkeeper isn't asking the Corps to help. It's asking the Corps to get out of the way. Bayou City Waterkeeper posits that vacating the AJD for failing to comply with the APA accomplishes that goal.

The Government argues that redressability is not present here because there is no guarantee that Broad Reach would request a new AJD or a § 404 permit. This argument dovetails with the one above because, again, Bayou City Waterkeeper is not asking for Broad Reach to obtain a new AJD or § 404 permit. It is asking this Court to remove a barrier to its enforcement of the CWA through a citizen suit. Removing that barrier is an adequate remedy for purposes of establishing standing at the pleading stage. Bayou City Waterkeeper has alleged that its members face an increased risk of flooding if the loss of wetlands goes unmitigated. The Corps made it difficult to obtain mitigation when it issued an AJD declaring those wetlands to be non-jurisdictional waters of the United States. Vacating that AJD, which Bayou City Waterkeeper alleges was issued in violation of the APA, provides Bayou City

---

[4] On this legal issue, the Court noted that determining the Secretary's authority "would not have been binding upon the agencies" because "[t]hey were not parties to the suit" and had "no reason . . . to honor an incidental legal determination." *Lujan*, 504 U.S. at 569.

Waterkeeper an opportunity to obtain mitigation of the lost wetlands. Standing is established.

\* \* \*

Bayou City Waterkeeper has demonstrated the basic requirements for constitutional standing: (1) an injury in fact; (2) that is fairly traceable to the Government's conduct; and (3) likelihood that a favorable decision will redress the injury.

## CONCLUSION

For the reasons provided above, the Government's motion to dismiss for lack of subject matter jurisdiction should be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 27th day of May 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE